UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOE BARAK,

       Plaintiff,

v.                                            Case No. 06-14424
                                               Honorable Patrick J. Duggan

A. ROBERT ZEFF,

       Defendant.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on April 12, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

Plaintiff Moe Barak ("Barak") filed this lawsuit against his former brother-in-law and business partner, Defendant A. Robert Zeff ("Zeff"), seeking profits derived from the sale of land in Torrejon, Spain. Barak also seeks damages against Zeff for common law fraud and misrepresentation. Presently before the Court is Zeff's motion to dismiss, filed February 15, 2007. Zeff claims the lawsuit should be dismissed on *forum non conveniens* grounds. Alternatively, Zeff argues that dismissal is appropriate pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure for failure to join indispensable parties. Zeff's motion has been fully briefed and on March 27, 2007, this Court issued a notice informing the parties that it is dispensing with oral argument pursuant to Rule 7.1(e)(2) of the Local Rules for the Eastern District of Michigan. For the reasons that

follow, the Court finds that Spain is a more convenient forum to resolve Barak's claims. Therefore the Court declines to address Zeff's second basis for dismissal.

**I.      Factual and Procedural Background**

Barak and Zeff are citizens of the United States. Barak resides in Michigan. Zeff is believed to reside in Connecticut and Florida, although he previously lived in Michigan, is a member of the State Bar of Michigan, and maintains a law office in Michigan. Barak was married to Zeff's sister, who now is deceased. *See* Pl.'s Resp. Ex. S ¶ 1.

In 1984, Barak and Zeff formed a Spanish corporation, Madrid Torrejon Jai Alai, S.A. (Madrid) ("MTJA") for the purpose of purchasing real property for a Jai Alai arena outside Madrid, Spain. A third individual, architect Antonio Alonso de la Rive Conde ("Rive"), holds a 2% interest in MTJA. Rive is a Spanish resident and citizen.

In the same year MTJA was formed, it purchased vacant land in Torrejon, Spain. The land never was developed and was sold in 2006 to a Spanish investment group, Grupo Lar. MTJA considered but rejected an earlier offer by a different Spanish investment group. The sales agreement between MTJA and Grupo Lar provided that Grupo Lar would pay MTJA the purchase price in multiple installments: 1.43 million euros paid at the time of sale; three periodic payments of 3.20 million euros each; and a final variable payment due in December 2007. Zeff has deposited the payments MTJA has received thus far from the sale into an international, corporate account located in London, England at Merrill Lynch International Bank. *See* Def.'s Reply Ex. 3(B) ¶ 5.

On October 10, 2006, while the sale to Grupo Lar was pending, Barak filed the instant action against Zeff. Barak also named MTJA as a defendant in his initial complaint. Barak filed an amended complaint on December 21, 2006, naming only Zeff as a defendant.

In his amended complaint, Barak alleges that Zeff engaged in various "misconduct." Specifically, for example, Barak claims that Zeff tried to get him to sign an agreement identifying various expenditures Zeff made as capital contributions or business expenses to or on behalf of MTJA, which Barak claims were Zeff's personal expenditures. *See* Am. Compl. ¶ 10. Barak further alleges that Zeff is demanding "reimbursement of" funds he claims he paid for architectural fees and work, when the corporation did not authorize the fees and the fees were paid "for a purpose unrelated to the best interest of [MTJA] and all its shareholders." *See id*. ¶ 12. Barak claims that Zeff instructed or caused someone to instruct a Spanish real estate agent working on the sale of MTJA to refuse to share information regarding the sale with Barak. *See id*. ¶ 14. Barak alleges that "Zeff accepted an offer for the sale of the property in question that provided a lesser amount to the shareholders than another offer from a bona fide purchaser . . ." *See id* ¶ 17. Barak also alleges that Zeff discharged MTJA's long-time accountants, Ernst & Young of Spain, because they advised MTJA that numerous expenditures Zeff claimed would not be allowed and Zeff wanted to claim these expenses improperly as capital contributions or return of allowable expenses. *See id*. ¶ 18. Barak further claims that Zeff intends to distribute the profits from the sale of real estate owned by MTJA "in a

3

manner that would allow him to receive funds as purported 'prepayment' of expenses but which would be a wrongful distribution under Spanish law and under contracts between the parties . . ." *See id*. ¶ 23.  Barak seeks damages in the form of *inter alia* his correct share of the net profits from MTJA's sale of the property in Spain, "[e]xemplary damages . . . for common law fraud and misrepresentation," and the return of funds expended by Barak at Zeff's insistence.

## II.     The Parties' Arguments

Zeff seeks dismissal of Barak's lawsuit on *forum non conveniens* grounds because, Zeff argues, Spain is a more convenient and appropriate forum in which to litigate the parties' dispute.  Zeff maintains that Barak's lawsuit essentially is a shareholder dispute over a Spanish corporation's distribution of its proceeds from the sale of Spanish land to a Spanish buyer, which involves the interests of a third shareholder who is a Spanish resident and citizen and who is not named as a party.  Alternatively, Zeff asks the Court to dismiss Barak's lawsuit because Barak has not joined– and cannot join– two indispensable parties: the Spanish corporation and the third shareholder.

Barak responds that his lawsuit involves Zeff, only, in that he alleges tortious conduct and a breach of contract Zeff committed against Barak, alone.  Barak argues that his choice of forum is entitled to deference and that the factors this Court must consider in ruling on a motion to dismiss on *forum non conveniens* grounds do not favor Spain over his chosen forum.  Because he maintains that he is seeking a judgment against Zeff personally, Barak maintains that the third shareholder and MTJA are not indispensable

parties.

### III.     Forum Non Conveniens

A dismissal based on *forum non conveniens* is proper where there is an adequate alternative forum and a balance of private and public interest factors weighs in favor of the alternative forum. *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 516 (6th Cir. 1986). "Ordinarily," an alternative forum is adequate "when the defendant is 'amendable to process' in the other jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S. Ct. 252, 265 n. 22 (1981)(quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-07, 67 S. Ct. 839 (1947)).

After determining that there is an adequate alternative forum, the court must evaluate the level of deference to afford the plaintiff's chosen forum. Generally, a U.S. plaintiff's choice of forum is granted strong deference and dismissal is appropriate "only when the defendant 'establishes such oppressiveness and vexation to a defendant as to be out of all proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent.'" *Duha v. Agrium, Inc.*, 448 F.3d 867, 873-74 (6th Cir. 2006)(quoting *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S. Ct. 828, 831-32 (1947)). However, "[t]he Supreme Court has noted that 'dismissal should not be automatically barred when a plaintiff has filed suit in his home forum.'" *Kryvicky*, 807 F.2d at 517 (quoting *Piper Aircraft Co.*, 454 U.S. at 255 n. 23, 102 S. Ct. at 265 n. 23). "[I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft Co.*, 454

U.S. at 255 n. 23, 102 S. Ct. at 265 n. 23.

To determine the "balance of conveniences," the Supreme Court has set forth certain private and public interest factors for courts to consider:

> Among the important private interest considerations are "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." The court must also consider problems in enforcing a judgment if one is obtained and relative advantages and obstacles to a fair trial, if any. . . . The Court also identified relevant public interest factors: administrative difficulties of courts with congested dockets; the burden of jury duty on people of a community having no connection with the litigation; desirability of holding a trial near those most affected by it . . .appropriateness of holding a trial in a diversity case in a court which is familiar with governing law.

*Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)(quoting *Gulf Oil Corp.*, 330 U.S. at 508-09, 67 S. Ct. at 843). No single factor is determinative. *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 106 (6th Cir. 1989). "The 'central focus of the . . . inquiry is convenience. . . .'" *Id.* (quoting *Piper Aircraft*, 454 U.S. 249, 102 S. Ct. at 262).

### A. Adequacy of Alternative Forum

This Court has little doubt that Spain is an adequate alternative forum as Zeff consents to a dismissal of this action conditioned on his recognition of Spanish jurisdiction over Barak's claims against him, waives any applicable limitations defenses, and stipulates that any Spanish judgment may be enforced against him in the United

States.  The Court is not convinced otherwise by Barak's argument that there is a realistic concern that his estate may inherit this litigation and that Michigan law provides an easier mechanism than Spanish law for an estate to continue litigation following a party's death. First, it is purely speculative that the need ever will arise for Barak's estate to become involved in this litigation.  Second, Barak has not convinced the Court that it *is* significantly easier in Michigan to continue litigation following a party's death.  With respect to Barak's age (88) and alleged declining health, the Court believes that these considerations are relevant to its analysis of the private interest factors outlined in *Gulf Oil*, not to its determination of whether Spain is an adequate alternative forum.

### B. Barak's Chosen Forum

Barak's choice of forum is entitled to significant deference.  Nevertheless, the Court finds that the relevant public and private interest factors weigh heavily in favor of adjudication in a Spanish court.  In other words, the Court concludes that Barak's chosen forum is outweighed by the "convenience"--i.e., the "central focus"-- of trying Barak's claims in Spain.

### C. Balancing the Private and Public Interests

Despite Barak's characteristic of his dispute with Zeff as one between individuals, this lawsuit really concerns a shareholder's conduct with respect to a corporation and the claim of the corporation's shareholders to certain corporate profits.  The corporation at issue was formed and operated under the laws of Spain.  The profits at issue were derived from the corporation's sale of land in Spain.  One of the corporation's three shareholders

7

also claims an interest in the profits and that shareholder is a citizen and resident of Spain. Moreover, Spanish accountants, lawyers, real estate agents, and other professionals were involved in the formation and operation of the corporation and its purchase and sale of the relevant Spanish property.

Thus with respect to the private interests to consider, Spain is a more convenient forum. Many, if not most, of the witnesses relevant to Barak's claims are located in Spain.[1] For example, MTJA's corporate accountants– who are located in Spain– most likely will be called to testify as to whether Zeff made the expenditures on behalf of MTJA which Barak disputes. Among the disputed expenditures are architectural fees charged by Rive– the Spanish shareholder. The testimony of MTJA's Spanish lawyers, accountants, and real estate agents will be relevant to Barak's claim that Zeff wrongfully rejected an initial offer to purchase the Madrid property and his claim that Grupo Lar's offer was not legitimate.

Even if Barak is correct that many of the potential witnesses from Spain speak English, their native language most probably is Spanish. These witnesses may find it easier to testify in their native language and thus interpreters still will be necessary. Additionally, it would be extremely costly to transport these witnesses to Michigan and pay for their lodging.

---

[1]Barak identifies a handful of witnesses, other than himself and Zeff, who are located in the United States. Barak, however, fails to identify the relevant testimony the non-party witnesses will provide.

Moreover, as Zeff argues, these witnesses probably are beyond this Court's jurisdiction. Barak responds to this argument by pointing out that "[n]othing prohibits a witness from voluntarily appearing or testifying by deposition. If both parties cooperate and instruct their employees, attorneys and accountants to appear voluntarily, much of this problem will go away." *See* Pl.'s Resp. at 21. He also argues that these witnesses are beholden to Zeff for their fees and therefore will appear at his request. However, whether these witnesses in fact will appear voluntarily is not certain. Additionally, there is no evidence that Zeff actually owes them any fees. Finally, these individuals are not Zeff's employees; rather they are professionals who provided services to MTJA. Some witnesses may not have even worked for MTJA previously. For example, Barak alleges that Zeff improperly rejected an earlier offer to sell MTJA's Madrid property. Zeff contends that the earlier offer was rejected because of impending changes in Spain's tax laws. Experts in Spanish real estate and tax law therefore may be called to testify.

In addition to witnesses, many documents regarding MTJA are located in Spain and are written in Spanish. Although some documents relevant to this dispute may have been translated into English already, as Barak argues, the Court expects that most documents have not. The cost of transporting documents to the United States from Spain may not be a significant factor. Translating those documents into English, however, would be time-consuming and costly.

With respect to the public interest factors, there can be no doubt that Spain has a greater interest in the parties' dispute as it centers around a Spanish corporation and the

9

sale of Spanish property to a Spanish investment group. The Court expects that a Spanish trier of fact is in a better position to evaluate Barak's claims than one in Michigan, as residents and citizens of Spain are more likely to possess knowledge about Spanish real estate transactions and the specific area where MTJA held property. Additionally, a Spanish trier of fact can evaluate the evidence– most witnesses and documents– without the aid of interpretation. Finally, Barak specifically claims that Zeff violated Spanish law and a judge in Spain is in a better position than this Court to evaluate that country's laws.[2]

## IV.  Conclusion

Based on the above, the Court concludes that Spain provides an adequate alternative forum, and that, although Barak's chosen forum is entitled to great deference, the balance of private and public interest factors weighs heavily in favor of a trial in Spain. The matter therefore is dismissed on *forum non conveniens* grounds conditioned upon Zeff's submission to the jurisdiction of the Spanish courts, his waiver of any statute of limitations defense, and his stipulation that any final judgment issued against him and in favor of Barak by the Spanish Courts is enforceable in the United States.

---

[2]In addition to resolving Barak's claim that Zeff plans a distribution of MTJA's proceeds from the sale of the Madrid property "which would be a wrongful distribution under Spanish law," *see* Def.'s Mot. at 16, Zeff identifies a number of areas in which the application of Spanish law will be relevant to the parties' dispute. *See* Am. Compl. ¶ 23. For example, the court will need to interpret Spanish corporate law regarding notice and disclosure requirements in order to resolve Barak's claim in paragraph 19 of the amended complaint that he was not given adequate notice of shareholder meetings. The court also will need to interpret Spanish tax law to determine whether the Grupo Lar offer was in MTJA's best interest or whether it was contrary to the corporation's interest, as Barak alleges in paragraph 17 of his amended complaint.

Accordingly,

**IT IS ORDERED**, that Defendant's motion to dismiss for *forum non conveniens* is **GRANTED** and Defendant's alternative request for dismissal for failure to join indispensable parties is **DENIED AS MOOT**.

							s/PATRICK J. DUGGAN
							UNITED STATES DISTRICT JUDGE

Copies to:
Robert N. Roether, Esq.
Norman C. Ankers, Esq.
Robert M. Jackson, Esq.